Our next case for this morning is United States v. Miller, and this is the appeal of Liliya Krasilnikova. Mr. Greenberg. Good morning, Your Honors. This case really involves a fairly simple question, in my view. A spouse who is not on title owed restitution to the government, and the government, simply by filing a lispendence notice on his wife's house, took that property, took equity in that house. The district court put the burden on the wife to show that the husband did not have any interest in the house, even though he was not on title, even though he had never made a mortgage payment, even though when the house was sold and the money at the sale was placed in escrow because of the lien that the government had placed, the title company did not require the husband to sign any document other than waiving his Illinois homestead interest. So you said there's no evidence that he ever made a mortgage payment. That is correct. I thought the district court found that mortgage payments, at least where records were available, were made from a joint checking account. Records were available for the entirety of the time period that was at issue. The government had investigated Mr. Miller. They had this information. Mortgage payments were made from a joint checking account? At some point there was a joint checking account to which mortgage payments were made, and the evidence was that Mr. Miller had deposited paychecks. No number was known. We didn't have these records. He had deposited paychecks for some time. These were your client's joint checking account, right? Yes. So we've got mortgage payments coming out of a joint checking account, property tax payments coming out of a joint checking account, right? We have one, possibly five payments coming out of this account towards the mortgage. We have no idea how many, but it was not over time. Let me get to the heart of the matter. Ordinarily, we deal with ownership of real estate by looking at who's on the title. The problem here, in essence, is what does it take to do something different? In this case, as I understand these records, in late 2013, Ms. Krasilnikova went off the property, correct? Yes. She was removed from the trust on November 14th of 2013, and a few days later the trust deeds the property to the Malikys, correct? Yes. Even if Ms. Maliky later says she didn't sign or know anything about this, Ms. Krasilnikova did know about it, right? Yes. Okay, so you're relying very heavily, almost entirely I think, on the deed that she received a few days after the Malikys gave a forged, or well, somebody forged the Malikys' signatures on a deed that gave title to the Myers Building and Contracting Company or Consulting Company, and then Myers deeded it to Ms. Krasilnikova, right? Correct. So, there is, as I understand it, undoubtedly a fraudulent deed at the core of your client's reliance on title. Is that right? No. What's wrong with that? What's wrong with that is that in 2015 the deed assigned to her, and as of 2015 to the world, she has clear title. Sure, but we now know that's a fraudulent transfer of title, right? Unless the earlier transfers have problems also. Well, if I read her testimony correctly, she's admitting that in 2013 she engaged in bank fraud by relying on the Malikys' credit history to obtain the mortgage in 2013, right? She did testify. The statute of limitations has run on that, as I understand this law, but that's an extraordinary set of circumstances. I understand, and I know that's where I say the district court was disturbed by what went on. Here's the problem with that reasoning. In 2015, if she didn't get a valid title, neither did he. So, everything about Mr. Miller's interest is derivative for Ms. Krasilnikova's. He cannot have any interest on his own, because he's never on anything. So why doesn't the government get the whole house? Well, why should they? Because they don't own it. But why should the government get it? Why not? It doesn't mean that she gets to keep it. It's a reward of, or he, for that matter. It's a reward for fraud. I understand that, but she bought the house. She paid for the house over the years. But as Judge Hamilton has shown, that washes out with all of these transactions when the Malikis come in there. I don't know whether they're innocent dupes or... So maybe the Malikis should have the house, or maybe Meijer's building, but that certainly doesn't, under any law, say that the government gets it. But you're not proposing to give it to anyone but Mr. Miller. I'm sorry, Your Honor. Your position is that Mr. Miller should get the other half of these proceeds. No, my position is that Mr. Miller should get nothing. Ms. Krasnikova should have gotten all of it. I don't represent Mr. Miller. I've never met Mr. Miller. I've never talked to Mr. Miller. I could care less about Mr. Miller. If he got one year or 20 years... But why should she get the benefit of these fraudulent transactions? She's not getting the benefit of the fraudulent transactions. If the government thought that she did stuff wrong, their remedy would have been to prosecute her. Not to seize... Since when does the government get to come in because someone owes money for restitution and say, well, you did bad things, and you're married to that person. They're tracing who owns this. As I understand the theory, it is that the paper title at this point is meaningless. And so, in the absence of a trustworthy title, the question is who exercised actual control, the incidence of ownership. And that's why I go back, as I think the district judge did, to both Mr. Miller's and Ms. Krasnikova's payments out of a joint checking account for the mortgage. They shared the house with their family. They paid property taxes. And to the extent there's confusion about the situation, it was created by them. That may all be true, but the joint payments on a mortgage were for a mortgage before 2015. Come 2015, she is making payments on that mortgage. She paid the property taxes. That was introduced into the record. When the house had to be sold, and there was still money owed for back property taxes that she went to her 401k, cashed it in, and that's all in the record, and paid those property taxes. So the essence, though, of what the district court does, to pick up what Judge Hamilton is saying, is it doesn't have confidence in this set of paper title transactions. It makes the critical finding, which you certainly criticized in your brief, that there's de facto ownership of the two of them. And it makes kind of a rough cut at how much she owns, how much Mr. Miller owns. But the judge bases this on a lot of evidence that she looks at. Where are these things coming from? What role does she play? What does she know about? She constantly testifies that she doesn't know about anything. The judge isn't so sure about that. But basically, the judge winds up with this factual finding that it's not 100% her property. Right, and the judge looks to divorce law and misapplies that because there's no- That's an analogy. That's a rough- What else should we do? But if you look at divorce law, divorce law says he has no interest because there's no divorce. And she never cites any empirical data of any kind. They called an expert. This is key. They called an expert. The expert said that all Ms. Kreslick-Nikova did was pay for the house to start with. And everything else he attributed to Mr. Miller without any good proof. And in fact- And nobody's relying on that. Right, but he said- So why is he so worried about it? It's all arbitrary. That's my point. This is all arbitrariness based on the fact that Mr. Miller owes restitution. And this was the asset. So the government came in- That's not what it's based. It's based upon evidence of joint exercise of control. What's wrong with that? Because there is no evidence of joint exercise of control. Because he had a key to the house. Or because he laid his head down there at night. All of the law under state law says that does not give him an ownership interest. Because at some point he may have deposited a paycheck into a joint account. There's no tracing of that. They had their expert. Their expert could have traced it. All right, Mr. Kramer, your time has expired. So you need to- Including my five minutes I reserve for- You worked your way through that. I might- We'll see how the government goes. Thank you. Ms. Klucke. May it please the court and counsel? I'm sorry. This case is about ownership of property in Illinois. Illinois law is clear that bare legal title does not dictate ownership. And in this case in particular, that is true. Because fraud was rampant throughout the title. The district court made some key credibility determinations. One of which is that the couple intentionally obscured who paid for the new house. And the reason this is important is because it goes towards control. After they raised the original property, you mean? Correct. Okay. And Ms. Kristin Lukova did not buy the house at that time. The State Bank of Countryside was the owner. The land trust, right? So she's one of the two beneficiaries. Correct. Are the Malikis innocent in this? Has the government prosecuted them or are they- They were not prosecuted. They were not. Okay. So we're looking at who contributed what. From 2013 to 2015, mortgage payments and tax payments were made out of the joint checking account. Thereafter, the district court found there was no evidence as to who was making payments on that first merit or first generation mortgage. Tellingly- It just wasn't available? Well, we didn't have the documents. The bank records, Ms. Kristin Lukova stated that she had made the payments. And the court said that and then proceeded to say there's no evidence. It seems like Mr. Greenberg wants the inquiry to start at 2015. So let's just, for purposes of discussion, start the inquiry at 2015 when Ms. Kristin Lukova finally gets on a deed by herself, gets title by herself. What then does the government have? Because what I see there are two almost simultaneous mortgages. One, the Malikis say, yeah, we signed this, but we signed it at Mr. Miller's request. So he's got his hands all over that. Then we've got one that she took out. Correct. So we've got things cutting both ways after 2015. What else do we have after 2015 that shows the government, assuming the government had a burden here, which the district court did say, what else did the government have after 2015? Well, I want to back up. That 2015 mortgage that was taken out in Ms. Kristin Lukova's name was not necessarily paid by only her. The court found there was no evidence either way on that mortgage. We know Mr. Miller took out the $310,000 mortgage because it was fraudulent. So we have a mortgage for $300,000 and a mortgage for $500,000. We have $250,000 spent to purchase the original house. We have $425,000 paid to build a new house. We know that the couple obscured who paid for the renovations. So the court said, all right, you've made this mess, the two of you. We don't know whether Ms. Kristin Lukova was aware of all of the fraudulent changes in the title. But the court said, well, either you had no clue in which case Mr. Miller clearly controlled the title or you were part of it, in which case you don't get it. You don't get any benefit of the doubt. I guess you're still going beyond where I wanted you to go. If you're just starting at 2015, you have these two mortgages you did just discuss, what else? And we have no evidence as to who was making the payments on either. And we have no evidence as to who paid off the $310,000 mortgage, although because Ms. Kristin Lukova didn't know about it until the hearing, one presumes that Mr. Miller paid it off. So you have equal payment, essentially, maybe a little bit more by her in terms of who took out the mortgage, a little bit less than him. But you have essentially equal. And that's why we're arguing. And then you have her on the title. Correct, although it's a fraudulent title. So even in that time period from 2015 until 2019, we don't know what was happening with that property. We know the title wasn't changed again after 2015. But we don't know who was actually paying for what. So let's go back to the burden of proof. I think the district court got it right. We did have a burden. The interested party was facially on a title that was facially accurate. We had the burden of saying, no, we believe that property is co-owned.  But the other side is arguing, the interested party is arguing that the percentage that was awarded to each side was wrong. And that was the burden that they had. They had the burden to show that she was entitled to 100% of the property. Why is that right? Why is that right? They then get the burden that it shifts, that you all want, the government wants the garnishment. Why don't they have the burden of also proving the percentage they want? Because under the Federal Debt Collections Procedures Act, when we issue a garnishment, it's presumed to be valid, or it is valid. They have, if someone wants to argue an exemption to that garnishment, they have the burden of proving an exemption. That's for defendants. In this case, Ms. Krasnikova is standing as an interested party, so her burden would be the same. We're arguing the money is not exempt because he essentially owned the property. She has the burden to prove, well, I owned 100% of it, not just 50% of it. And that's because she's seeking to exempt the money from the house. Ms. Klucke, I'm worried that if we affirm here, we are at some risk of casting doubt on property titles. If I think about it, there are few foundations to the rule of law in the United States more important than reliable property ownership records. So how should we write an opinion if we agree with the government without messing up property law? Well, Illinois law, like a restitution judgment, is exercised in the same way as a tax levy. And Chicago title, the Seminole, Illinois Supreme Court case, that's exactly what it was dealing with. The property was held in the land trust. The court held, not only did the trustee and the beneficiaries have, they all had liability for the taxes. In other words, it did go beyond the title. So we're not addressing property laws outside of restitution and the Federal Debt Collection Procedures Act. Let me try again because I'm not, but ordinarily, I understand the title may not be conclusive under Illinois law. But it surely carries an awful lot of weight. So how do we describe the burden consistent with Illinois property law that it takes to get past the title? By saying the government has the burden of proving that that title is not valid, which we've done here. I'm not saying that we always have to produce this much evidence. I'm not saying that the title always has to be fraudulent. And you could say that you don't necessarily have to decide the burden of proof issue. I think the documents that we have produced, which almost all came from us, did meet our burden of proof with the fraud, the credibility issues. What was the court supposed to do? There is no way you could give the value of this house 100% to someone who, if she did not participate, well, we know she participated in the fraud with respect to the Carrington mortgage. So for you to award anything more than half, which she already has, we have never claimed more than half of this value. Opposing counsel asked if we would agree to the release of the other half, and we did. All we have left now is the 50%. And if you give that 50% to the interested party here, you have rewarded someone who has engaged in fraud herself. You have rewarded two people who intentionally obscured the renovations and the building of the new house. Yeah, but you're not engaging in a backdoor prosecution of Ms. Krasnodlikova right now. You're just trying to get your money from Mr. Miller. So I don't know if that should be our concern, rewarding her. You know, I do have a question about the law that should apply. You've said that marital and divorce laws are the most analogous here, but then you've also talked about the definition of ownership being found and, you know, the tax liens and tax laws. Do we need to go to marital and divorce law to decide this issue? Well, in terms of the percentage of ownership, if you stayed with property laws, the problem is, as you've also pointed out, the title is only in her name. So once you pierce that title and show that it's actually fraudulent, and the fraud itself, we're not trying to show either one of them engaged in fraud with respect to, say, the sale of the house. But we know that he engaged in fraud with respect to the title of the house. He wasn't prosecuted for this house. He was prosecuted for mortgage fraud with other houses. So if you look at the reason why his wrongdoing is relevant here is because it goes towards the issue of ownership. Who controlled the property? Illinois law doesn't just hinge for tax levies, for restitution. You don't just center on property laws. Okay, I think maybe we'll leave it there. Thank you very much. Thank you. And I'll give you one final minute, Mr. Greenberg. Thank you. I think one of the things that scares me about this case is exactly what Your Honors just touched on. They didn't file anything that alleged fraud. They didn't attack anyone for fraud. They didn't bring a fraud action. They essentially sent a list pendants notice, which said nothing, and then said, well, she's engaged in fraud, he's engaged in fraud, so therefore we get it. Maybe it was an action to quiet title, but it still doesn't quiet title in their favor. I would also correct something. I checked the record. There's no finding that taxes were paid from a joint account, just that some mortgage payments on the mortgage before 2015 were. And last, I would point out that the district court, even after all of this, said that Ms. Krasnikova may have been unaware of the fraud, but because she was unaware of the fraud, she could not be the exclusive owner. That's what the court said at one point in its opinion, which to me just makes no sense. If she wasn't aware of the fraud, then how can she suffer from that? And even if she was aware. We need to wrap up. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.